IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMCO INSURANCE COMPANY,

     Plaintiff,

v.                                 Case No. 14-cv-890 GBW/CG

SIMPLEXGRINNELL LP,

     Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant's Motion to Dismiss (*doc. 8*), which has been converted to a Motion for Summary Judgment. *See doc. 27.* Having reviewed the motion, the attendant briefing, and the relevant law, and being otherwise fully advised, the Court will GRANT Defendants' motion.

## I.    BACKGROUND

This case stems from a kitchen fire which took place at Plaza Restaurant, LLC ("Plaza Café") on September 4, 2010, after an employee left a pot of cooking materials on a stovetop burner overnight. *Doc. 8* at 2. Defendant had been inspecting and servicing an ANSUL fire suppression system at Plaza Café since 2007, but that system failed to operate and the fire caused damage to the restaurant. *Id.* at 2. Plaintiff provided commercial property insurance to Plaza Café, and reimbursed Plaza Café $1,101,762.31 pursuant to the policy. *Id.*; *doc. 55* at 2.

Plaintiff brought a claim against Defendant as subrogee of Plaza Café, asserting claims of negligence, breach of contract, breach of implied warranty, breach of express warranty, negligent misrepresentation, and unfair and unconscionable trade practices. *Doc. 1* at 7-11.  Plaintiff bases its claims on Defendant's contract with Plaza Café, claiming that Defendant was responsible for the damage caused by the fire.  *Id.* at 7.

Defendant filed its Motion to Dismiss on October 9, 2014, and attached the contract between Defendant and Plaza Café, which includes a waiver of subrogation provision.  *See Doc. 8-2.*  On November 25, 2014, the Court converted the motion to dismiss into a motion for summary judgment and gave the parties "a reasonable opportunity to present all material that is pertinent to the motion."  *Doc. 27*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

The court's role is not to weigh the evidence or determine credibility, but rather merely to assess whether a genuine issue exists as to material facts requiring a trial. *See Anderson*, 477 U.S. at 249, 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257. Furthermore, the court must resolve reasonable inferences and doubts in favor of the non-moving party, and construe evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551-54 (1999). However, "viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.*, 626 F. Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will not avoid summary judgment."). As with any fact asserted by a party in a summary judgment motion, the plaintiff must point the Court to such support by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

## III.   UNDISPUTED FACTS

1.   Defendant has been inspecting and servicing Plaza Café's ANSUL Fire

Suppression System since at least 2007.  *Doc. 52* at 1; *doc. 56* at 2.

2. Each time Defendant performed an inspection or service of Plaza Café's ANSUL system, it provided a report labeled on the front side as either a "Range Hood Systems Report" or a "Suppression/Inspection" report and labeled on the reverse side as a Service Agreement (both sides, together, hereinafter referred to as the "Contract").  *Doc. 52* at 2; *doc. 56* at 2.

3. Every Contract that Plaza Café executed with Defendant covering the inspection and service work on Plaza Café's ANSUL system contained identical terms and conditions.  *Doc. 52* at 4; *doc. 56* at 4.

4. Since at least 2007, Andrew Razatos, the manager of Plaza Café, authorized payment of the amount listed on the front side of the Contracts.  *Doc. 52* at 2; *doc. 56* at 2.

5. Defendant conducted an inspection of Plaza Café's ANSUL system on June 11, 2010.  *Doc. 52* at 2; *doc. 56* at 2.

6. An employee of Plaza Café, referred to as "Marvin G.", signed the front side of the Contract dated June 11, 2010, and the signature field listed the signee as "Customer's Authorized Agent."  *Doc. 52* at 2; *doc. 56* at 3.

7. Mr. Razatos had instructed Marvin G. to receive, inspect, and sign for other goods as part of his job with Plaza Café.  *Doc. 52* at 3; *doc. 56* at 4.

8. Mr. Razatos never informed Defendant that Marvin G. lacked authority to sign

the Contracts as Plaza Café's "Authorized Agent."  *Doc. 52* at 3; *doc. 56* at 4.

9.  Later in June, Mr. Razatos called Defendant to schedule repair work.  *Doc. 52* at 3; *doc. 56* at 3.

10. On July 19, 2010, Defendant returned and performed additional service work on the ANSUL system, as requested by Mr. Razatos.  *Doc. 52* at 3; *doc. 56* at 3.

11. Mr. Razatos' signature appears on the front of the July 19, 2010 Contract.  *Doc. 52* at 3; *doc. 52-5* at 1; *doc. 56* at 4.

12. The "Important Notice to Customer" warnings appearing on the front of the Contracts were drafted by Defendant's in-house attorneys without input from Plaza Café or its representatives.  *Doc. 56* at 7; *doc. 58* at 1.

13. On the reverse side of the Contracts, the "Limitation of Liability" provisions state that if Plaza Café wishes protection from any loss or damage, it must obtain its own insurance.  The provision further specifies that, should Plaza Café choose to acquire insurance, it will waive any right of subrogation that its insurer may have against Defendant, stating:

> It is understood and agreed by the Customer that Company is not an insurer and that insurance coverage, if any, shall be obtained by the Customer and that amounts payable to Company hereunder are based upon the value of the services and the scope of liability set forth in this Service Request and are unrelated to the value of the Customer's property and the property of others located on the premises.  Customer agrees to look exclusively to the Customer's insurer to recover for injuries or damage in the event of any loss or injury and that Customer releases and waives all right of recovery against Company arising by way of subrogation.

*Doc. 52* at 4; *doc. 56* at 5.

14. On the reverse side of the Contracts, the "Limitation of Liability" provisions state that Plaza Café may obtain a higher limit of liability from Defendant by executing a rider and attaching it to the Contracts.  *Doc. 52* at 4; *doc. 56* at 6 ("If Customer desires Company to assume greater liability, the parties shall amend the Service Request by attaching a rider setting forth the amount of additional liability and the additional amount payable by the Customer . . . .").

15. The "Limitation of Liability" provisions were drafted by Defendant's in-house attorneys without input from Plaza Café or its representatives.  *Doc. 56* at 7; *doc. 58* at 1.

16. The "Limitation of Liability" provisions were not the subject of negotiations between Plaza Café and Defendant.  *Doc. 56* at 6; *doc. 58* at 1.

17. The "Limitation of Liability" provisions were presented to Plaza Café employees on each occasion after the work had already been completed by Defendant.  *Doc. 56* at 7; *doc. 58* at 1.

18. Defendant did not review the "Limitation of Liability" provisions with any Plaza Café employees at the times it presented the Contracts for signature.  *Doc. 56* at 7; *doc. 58* at 2.

19. No oral or written agreements evidencing Defendant's asserted "Limitation of Liability" terms exist between the parties other than those contained on the

reverse side of the Contracts.  *Doc. 56* at 6; *doc. 58* at 1.

**IV.  ANALYSIS**

Plaintiff alleges that Defendant is liable to Plaza Café for negligence, breach of contract, breach of implied warranty, breach of express warranty, negligent misrepresentation, and unfair and unconscionable trade practices.  Plaintiff seeks to recover Plaza Café's losses through subrogation, as Plaintiff paid Plaza Café for its losses due to Plaintiff's obligations under an insurance policy.  For the following reasons, the Court finds that Defendant is entitled to summary judgment on each of Plaintiff's claims.

### A.  Each Contract between Plaza Café and Defendant Contained a Waiver of Subrogation

As Plaintiff concedes that its "Complaint is a subrogation action seeking redress for property damage, business interruption and other related losses," it is undisputed that Plaintiff cannot succeed on any of its counts unless it retains a right to subrogation of its insured, Plaza Café.  *Doc. 1* at 6.  Thus, the Court must first decide whether Plaintiff had a right to subrogation before determining if any of Plaintiff's claims have merit.

Under New Mexico law, "an insurer who pays the claim of its insured . . . is deemed to be subrogated by operation of law to recovery of its payments against a person who caused the loss."  *Safeco Ins. Co. of Am. v. U.S. Fid. & Guar. Co.*, 679 P.2d 816, 817 (N.M. 1984).  Generally, "the right of subrogation allows an insurer who has fully

7

compensated the insured to step into the shoes of the insured and collect what it has paid from the wrongdoer." *Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 838 (N.M. 1995).  This doctrine of subrogation "is founded upon the relationship of the parties and upon equitable principles, for the purpose of accomplishing the substantial ends of justice." *U.S. Fid. & Guar. Co. v. Raton Nat. Gas Co.*, 521 P.2d 122, 125 (N.M. 1974) (quoting 6A Appleman, *Insurance Law and Practice* § 4054 at 142-44).

However, New Mexico law provides an exception to the right of subrogation when it has been waived by contract.  *See, e.g., State ex rel. Regents of New Mexico State Univ. v. Siplast, Inc.*, 877 P.2d 38, 43 (N.M. 1994) (holding that contractual waiver of subrogation rights precluded recovery by insurer).  An insurer who files a subrogation action "has no greater rights than its insured.  In other words, if [the insured] waived subrogation rights against [a party to a contract], [the insurer] will have no rights of subrogation" against that party.  *Great Am. Ins. Co. of New York v. W. States Fire Prot. Co.*, 730 F. Supp. 2d 1308, 1323-24 (D.N.M. 2009).  A subrogation waiver, when combined with an insurance coverage requirement, "eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under [the insurance policy]." *Id.* at 1325.  Thus, if Plaza Café waived subrogation rights against Defendant, then Plaintiff cannot pursue a subrogation claim against Defendant.

The parties agree that the reverse side of each Contract contains language waiving Plaintiff's subrogation rights against Defendant.  *See doc. 52* at 4; *doc. 56* at 5.

They disagree, however, as to whether the language in the Contract is binding upon

Plaza Café and, by extension, Plaintiff.  *See doc. 8* at 4; *doc. 55* at 5.

### B.  *The Waiver of Subrogation is an Enforceable Contract Provision*

In arguing that the subrogation waiver contained in the Contract is not binding,

Plaintiff asserts that the provision is unenforceable as a procedurally and substantively

unconscionable term contained within an impermissible adhesion contract.  *Doc. 55* at 5-

15.  The Court addresses each of these assertions individually.

### 1. Adhesion

Plaintiff first argues that the waiver of subrogation provision is a term of

adhesion which should not be enforced.  *Doc. 57* at 5.  As an initial matter, the Court

notes that, while determining whether a contract is one of adhesion is a relevant

consideration when considering a request to void a provision, it is by no means

sufficient.  This is because adhesion contracts are not automatically unenforceable or

void.  *See Carl Kelley Const. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1340 (D.N.M.

2009).  Rather, contracts of adhesion or provisions therein are not invalid in New

Mexico absent a further showing of unconscionability.  *Id.; see also Rivera v. Am. Gen.*

*Fin. Servs., Inc.*, 259 P.3d 803, 817 (N.M. 2011).

Under New Mexico law, three elements must be met before declaring an

agreement to be a contact of adhesion:

> First, the agreement must occur in the form of a standardized contract
> prepared or adopted by one party for the acceptance of the other.  Second,

the party proffering the standardized contract must enjoy a superior
bargaining position because the weaker party virtually cannot avoid
doing business under the particular contract terms.  Finally, the contract
must be offered to the weaker party on a take-it-or-leave-it basis, without
opportunity for bargaining.

*Cordova v. World Fin. Corp. of N.M.*, 208 P.3d 901, 910 (N.M. 2009) (quoting *Guthmann v. LaVida Llena*, 709 P.2d 675, 678 (1985).

Here, there is no dispute that the Contract was drafted by Defendant's in-house attorneys without input from Plaza Café or its representatives.  *Doc. 56* at 7; *doc. 58* at 1. Thus, the first element of an adhesion contract is satisfied.  However, as to the second element, Plaintiff has not provided sufficient evidence demonstrating that it possessed a weaker bargaining position or an inability to reject the terms of the Contract.  Therefore, Plaintiff's evidence is insufficient to show a lack of bargaining power on the basis of inability to avoid doing business under the Contract's terms.

For the third element of adhesion contracts, lack of opportunity to bargain can be demonstrated "by showing: (1) that the dominant party has been granted a monopoly; (2) that it afforded no opportunity to negotiate; or (3) that the weaker party attempted to negotiate and failed."  *Guthmann*, 709 P.2d at 678 (disapproved of on other grounds by *Cordova*, 208 P.3d at 909-10).  First, the record shows no evidence that Defendant is the only fire suppression company in the area, or that Plaza Café was somehow forced to work with Defendant.  *See doc. 57* at 5.  In addition, Plaintiff makes no assertion that Defendant had been granted a monopoly.  *See generally doc. 55* at 5-15.

Further, the evidence demonstrates that Defendant afforded Plaza Café an

opportunity to negotiate the terms of the Contract.  The Contract itself states:

>  [i]f Customer desires Company to assume greater liability, the parties shall
> amend this Service Request by attaching a rider setting forth the amount of
> additional liability and the additional amount payable by the Customer for the
> assumption by Company of such greater liability, provided however that such
> rider shall in no way be interpreted to hold Company as an insurer.

*Doc. 58-3* at 2.  While Plaintiff objects that the Contracts were provided for

approval by kitchen cooks who have no authority to negotiate on behalf of Plaza Café,

the manager of Plaza Café, Andrew Razatos, was aware that the cooks were signing the

documents and made no attempt to renegotiate those contracts.  *Doc. 58-1* at 5.

Moreover, whether these past documents were validly ratified is immaterial, as Mr.

Razatos himself signed the relevant Contract containing the terms and conditions on

July 19, 2010.  *Doc. 58-2* at 21; *doc. 58-1* at 5.  Although Mr. Razatos stated that he "do[es]

not recall signing a service agreement with [Defendant]," he admitted in his deposition

that his signature is on the front side of the July 19, 2010 Contract in the block

designated "Customer's Authorization." *Doc. 56-1* at 6, 8.  Therefore, Plaintiff's evidence

is insufficient to show a genuine dispute of material fact as to whether Defendant

afforded an opportunity to negotiate, as the terms clearly detail an opportunity to

amend the limitation of liability provisions and Defendant's actions are not inconsistent

with these terms.

Finally, Plaintiff has presented no evidence that Plaza Café made any attempt to

negotiate the terms of the contract, and both parties agree that the terms of the contract were never the subject of negotiation.  *Doc. 56* at 6; *doc. 58* at 1.  Plaintiff suggests that the terms and conditions are unenforceable because they were on the reverse side of the Contract, but the front side of the document states in capital letters and directly above the signature block: "CUSTOMER'S ATTENTION IS DIRECTED TO THE LIMITATION OF LIABILITY, WARRANTY, INDEMNITY AND OTHER CONDITIONS ON THE REVERSE SIDE."  *Doc. 52-5* at 1.  While it may be reasonable to believe that the kitchen cooks might not exercise due diligence in reading the terms on the reverse side of the document, it must be assumed that the manager of Plaza Café accepted these terms when he signed the front side of the document.  And, although Defendant's service technicians may not have had authority to negotiate the terms on behalf of Defendant, Mr. Razatos could have contacted another employee working for Defendant if he had wished to negotiate the terms.  *Doc. 56-2* at 4.  The evidence, however, fails to demonstrate any such desire or attempt to negotiate with Defendant.  *Doc. 56* at 7; *see Albuquerque Tire Co. v. Mountain States Tel. & Tel. Co.*, 697 P.2d 128, 132 (N.M. 1985) (no adhesion contract where "the record is silent as to whether this contract form was the only one ever allowed by [the defendant], whether [the defendant] ever afforded . . . its customers an opportunity to negotiate contract terms, or whether [the plaintiff] ever attempted and failed to negotiate the terms of its contract with [the defendant]").

        For these reasons, the Court finds that, as a matter of law, this agreement did not

constitute a contract of adhesion.

## 2. Unconscionability

Regardless of whether the contract is one of "adhesion," the Court must determine whether the subrogation waiver provision is unconscionable.

> Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party. The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives.

*Rivera*, 259 P.3d at 816-17 (quoting *Cordova*, 208 P.3d at 907) (internal citations omitted). Although there is no absolute requirement that both be present, "there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability." *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 306 P.3d 480, 489 (N.M. 2013).

### a. Procedural Unconscionability

In determining whether a contractual provision is procedurally unconscionable, the Court considers the "factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Strausberg v. Laurel Healthcare Providers, LLC*, 304 P.3d 409, 418 (N.M. 2013). Protections against procedural uncnoscionability are concerned with the two-fold purpose of preventing unfair surprise and oppression which result in unequal

bargaining power during entry into an agreement. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 329 P.3d 658, 673 (N.M. 2014); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) ("A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.") (internal quotations omitted).

Upon review of these considerations, the Court finds that the undisputed facts fail to demonstrate procedural unconscionability. Defendant has been inspecting and servicing Plaza Café's ANSUL Fire Suppression System since 2007, with the fire occurring in September 2010. *Doc. 52* at 1; *doc. 56* at 2; *doc. 8* at 2. During this time, Defendant provided Plaza Café many Contracts covering the inspection and service work on Plaza Café's ANSUL system, and each agreement executed with Defendant contained identical terms and conditions. *Doc. 52* at 4; *doc. 56* at 4. This fact weighs heavily against a finding of surprise, as representatives of Plaza Café had ample opportunity over multiple transactions to review and comprehend the terms of their agreement with Defendant. *See THI of N.M. at Hobbs Ctr., LLC v. Spradlin*, 893 F. Supp. 2d 1172, 1186 (D.N.M. 2012) (holding that a party to a contract has a duty to read and familiarize itself with its contents). Plaintiff alleges that the kitchen staff (presumably including Marvin G.) was "uneducated and unsophisticated in legal matters," yet Plaintiff does not allege the same of Mr. Razatos, who signed the July 19, 2010 Contract. *Doc. 55* at 9. Further, Mr. Razatos had instructed Marvin G. to receive, inspect, and sign

for other goods as a part of his job with Plaza Café, and Mr. Razatos was aware that

Marvin G. was signing documents on behalf of the company.  *Doc. 52* at 3; *doc. 56* at 4;

*doc. 58-1* at 5.

Although Plaintiff asserts that Defendant provided these agreements on each

occasion only after the work was already completed, it is undisputed that Mr. Razatos

repeatedly authorized payment of the amount listed on the front side of the Contracts.

*Doc. 52* at 2; *doc. 56* at 2; *doc. 55* at 3.  Plaintiff asserts that Plaza Café "possessed no after-

the-fact bargaining power once [Defendant] had already completed the work;"

however, had Mr. Razatos objected to any of the terms contained in the agreements, he

could have requested changes to the terms on future agreements.  There is no evidence

that he ever made such requests or had reason to believe that he could not cease

authorization of payments for the services.

In an alternative claim of unfair surprise, Plaintiff objects that the terms of the

limitation of liability are inconspicuous and ambiguous.  *Doc. 55* at 11.  The Court

disagrees for several reasons.  First, the front side of the Contract contains a section

located directly above the signature block, in which the heading "IMPORTANT

NOTICE TO CUSTOMER" is written in capital letters.  *Doc. 58-3* at 1; *see THI*, 893 F.

Supp. 2d at 1186 (arbitration clause not hidden when "plainly visible above the

signature lines" and labeled in capital letters).  Underneath that heading, also in capital

letters, are the words: "CUSTOMER'S ATTENTION IS DIRECTED TO THE

LIMITATION OF LIABILITY, WARRANTY, INDEMNITY AND OTHER CONDITIONS ON THE REVERSE SIDE." *Doc. 58-3* at 1.  The limitation of liability is the very first term to appear on the reverse side of the Contract, and the second sentence states that "Customer agrees to look exclusively to the Customer's insurer to recover for injuries or damage in the event of any loss or injury and that Customer releases and waives all right of recovery against Company arising by way of subrogation." *Id.* at 2.  This waiver of subrogation is conspicuously located in the very first paragraph and clearly detailed in unambiguous language.  While the Court acknowledges that Plaza Café's line cooks may not understand the meaning of the term "subrogation," Mr. Razatos could be reasonably expected to understand such a term as the manager of Plaza Café.  Moreover, notwithstanding the reference to "subrogation," the language is as clear as possible that Plaza Café would solely rely on its insurer for recovery.  Under these circumstances, the Court finds the waiver of subrogation to be unambiguous.

As the Court finds no factual circumstances surrounding the formation of the Contract which demonstrate that Plaza Café lacked the ability to decline or was unfairly surprised by Defendant's terms, Plaintiff has failed to provide sufficient evidence of procedural unconscionability.

### b. Substantive Unconscionability

Plaintiff also claims that the Contract should not be enforced because the terms are substantively unconscionable.  *Doc. 55* at 10.  Substantive unconscionability concerns "the legality and fairness of the contract terms themselves."  *Flemma v. Halliburton Energy Servs., Inc.*, 303 P.3d 814, 820 (N.M. 2013).  A contract is considered substantively unconscionable "when its terms are unreasonably favorable to one party." *Monette v. Tinsley*, 975 P.2d 361, 365 (N.M. 1999).  To recover under this theory, a party must demonstrate that "the provision is grossly unreasonable and against our public policy under the circumstances." *Cordova*, 208 P.3d at 909.

Plaintiff alleges that the limitation of liability, including the waiver of subrogation clause, is substantively unconscionable as an exculpatory provision.  *Doc. 55* at 2.  However, unlike many other exculpatory provisions, waivers of subrogation are routinely upheld.  *See supra*, Section IV:A; *Great N. Ins. Co. v. Architectural Environments, Inc.*, 514 F. Supp. 2d 139, 143 (D. Mass. 2007) ("[U]nlike exculpatory clauses which relieve a party from liability for its own wrongdoing and leave the victim without recourse, a waiver of subrogation clause does not prevent the injured party from being compensated.); *Travelers Indem. Co. v. Crown Corr Inc.*, 589 F. App'x 828, 833 (9th Cir. 2014) ("[S]ubrogation waivers are different from traditional exculpatory clauses.  Subrogation waivers do not present the same dangers as exculpatory clauses, because no risk exists that the injured party will be left without compensation . . . .").  In

addition, subrogation waivers serve important public policy goals, such as "encouraging parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity." *Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.*, 749 N.W.2d 124, 130 (Neb. 2008).  Since the waiver of subrogation contemplated that Plaza Café would be compensated by Plaintiff, its insurer, the waiver is not an exculpatory clause and does not constitute substantive unconscionability.[1]  The waiver of subrogation is binding upon Plaintiff, and therefore Plaintiff's claims of breach of contract, breach of implied warranty, and breach of express warranty (all of which arise out of the contract) fail as a matter of law.[2]

### C.  *Plaintiff's Claims arising from Common Law Tort Duties Fail as a Matter of Law*

In addition to its contract claims, Plaintiff brings claims against Defendant for negligence and negligent misrepresentation.  *Doc. 1* at 7, 9.  Under New Mexico law, "a contract that specifically defines the parties' rights and duties precludes any extracontractual tort duty regarding the contract's subject matter."  *Anderson Living Trust v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1043 (D.N.M. 2013).  Thus, if a

---

[1] While the focus of the fairness of a given term is on its impact on the contracting party – Plaza Café in this case – the Court notes that the subrogation waiver is not unfair to Plaintiff either.  As an insurer of a restaurant, it could have conditioned its insurance coverage upon Plaza Café contracting for fire suppression without a subrogation waiver.

[2] Plaintiff also asserts that the provision limiting Defendant's liability to $297.99 is substantively unconscionable.  *Doc. 55* at 14-15.  In addition, Plaintiff alleges that Defendant's disclaimer of implied warranties is unenforceable under New Mexico law.  *Id.* at 15.  However, because Plaintiff is barred from recovery due to the waiver of subrogation, the Court need not reach those arguments.

defendant's conduct does not breach the contract with the plaintiff, the plaintiff "may not seek to hold [the defendant] liable in tort for the same conduct." *Id.* Similarly, "New Mexico case law stand[s] for the proposition that the existence of any tort liability cannot conflict with any contractual duties between the parties." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116 (10th Cir. 2005); *see also Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 24 (10th Cir. 1984).

Plaintiff's tort claims assert that Defendant breached its common law duties by "failing to properly and safely inspect, clean, service, maintain and/or repair the fire suppression system" and making "material misrepresentations . . . regarding its cleaning, inspection, maintenance, and service of the fire suppression system." *Id.* at 7, 9. However, the Contract itself specifically defined the rights and duties of Defendant and Plaza Café, including the limitation of liability and the disclaimer of warranties. *Doc. 8-2* at 2. Furthermore, Defendant had no common law duties to inspect, clean maintain, service, or repair the fire suppression system of Plaza Café, as these duties arose solely from the Contract. As Plaintiff cannot bring tort claims based on duties arising solely from a contract, summary judgment is appropriate for Plaintiff's claims of negligence and negligent misrepresentation.

### D. *Plaintiff's Claim Arising from the Unfair Trade Practices Act Fails as a Matter of Law*

Finally, Plaintiff alleges that Defendant committed several acts and omissions that violated the New Mexico Unfair Trade Practices Act (UPA), NMSA 1978, 57-12-1, *et*

*seq.* The UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3. The UPA is a consumer protection law, and likewise "gives standing only to buyers and sellers of goods and services." *Hicks v. Eller*, 280 P.3d 304, 309 (N.M. 2012); *see also Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1240 (D.N.M. 2015) ("Because New Mexico law currently restricts UPA claims to actual consumers of goods and services, there is no basis to expand the UPA to give standing to a non-consumer third party claimant . . . .").

Here, Plaza Café, and not Plaintiff, purchased the fire suppression system from Defendant. As discussed above, Plaintiff has no right to sue Defendant on behalf of Plaza Café due to the valid waiver of subrogation found in the Contract. Therefore, Plaintiff has no standing as a consumer of Defendant's goods or services, and summary judgment is appropriate.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (*doc. 8*) is GRANTED.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**